**FILED**

MAY 2 6 2009

CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIV. 09-5049 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BLACK HILLS TREE FARM, | ) | |
| a South Dakota General Partnership, | ) | |
| JERRY G. ROSETH, LUETTA A. ROSETH, | ) | |
| CARRIE M. ROSETH, n/k/a CARRIE M. LURZ, | ) | |
| PAULETTE A. COMBS, n/k/a PAULETTE | ) | |
| A. ROSETH, JOHN M. COMBS, | ) | |
| WESTERN HILLS TREE FARM, | ) | |
| DONALD R. BURNS, PHILIP MOTOR, INC., | ) | |
| a South Dakota Corporation, DAKOTA | ) | |
| AUTO SUPPLY, a South Dakota Corporation, | ) | |
| and BADGER TREE MOVERS, L.L.C., a | ) | |
| Colorado Limited Liability Company, | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

# TABLE OF CONTENTS

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Sanders Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Form CCC-502B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Federal Crop Insurance Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

BHTF's Crop Insurance Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Damage to Trees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Indemnity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Sanders Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Sale of Destroyed Trees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

COUNT 1 - False Claims Act, 31 U.S.C. § 3729(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . .   17

COUNT 2 - False Claims Act, 31 U.S.C. § 3729(a)(3). . . . . . . . . . . . . . . . . . . . . . . . .   19

COUNT 3 - False Claims Act, 31 U.S.C. § 3729(a)(7). . . . . . . . . . . . . . . . . . . . . . . . .   20

COUNT 4 - Civil Conspiracy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

COUNT 5 - Common Law Fraud, Ownership of Crops. . . . . . . . . . . . . . . . . . . . . . .   22

COUNT 6 - Common Law Fraud, True Amount of Monies Generated From Crop   23

COUNT 7 - Mistake of Fact, Ownership of Crops . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

COUNT 8 - Mistake of Fact, True Amount of Monies Generated From Crop. . . .   26

COUNT 9 - Mistake of Fact, BHTF's Sale of Trees to Burns and/or WHTF. . . . . .   27

COUNT 10 - Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

Plaintiff, the United States of America, brings this civil action against Defendants and, upon information and belief, alleges as follows:

## JURISDICTION

1.   The United States brings this action against Defendants pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*

2.   This Court possesses subject matter jurisdiction to entertain this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367.

## PARTIES

3.   At all times relevant to this Complaint, Defendant Black Hills Tree Farm ("BHTF") was a general partnership with its principal base of operations located in Caputa, South Dakota, and whose main office address was in Philip, South Dakota.  BHTF's purpose was to own and operate a tree farm.  Exhibit A.

4.   At all times relevant to this Complaint, Defendant Jerry G. Roseth ("Jerry Roseth") was a general partner of BHTF with an ownership interest therein of 17 percent.  At all times relevant to this Complaint, Defendant Jerry Roseth resided in Philip, South Dakota.

5.   At all times relevant to this Complaint, Defendant Luetta A. Roseth was a general partner of BHTF with an ownership interest therein of 17 percent.  At all times relevant to this Complaint, Defendant Luetta A. Roseth resided in Philip, South Dakota.

6. At all times relevant to this Complaint, Defendant Carrie M. Roseth was a general partner of BHTF with an ownership interest therein of 17 percent. Upon information and belief, Defendant Carrie M. Roseth is now known as Carrie A. Lurz and resides in Philip, South Dakota.

7. At all times relevant to this Complaint, Defendant Paulette A. Combs was a general partner of BHTF with an ownership interest therein of 25 percent. At all times relevant to this Complaint, Defendant Paulette A. Combs resided in Colorado Springs, Colorado. Upon information and belief, Defendant Paulette A. Combs is now known as Paulette A. Roseth and resides in Philip, South Dakota.

8. At all times relevant to this Complaint, Defendant John M. Combs was a general partner of BHTF with an ownership interest therein of 24 percent. At all times relevant to this Complaint, Defendant John M. Combs resided in Colorado Springs, Colorado.

9. At all times relevant to this Complaint, Defendant Western Hills Tree Farm ("WHTF") was upon information and belief a sole proprietorship wholly owned by Donald R. Burns with its principal office located in Philip, South Dakota.

10. WHTF did not file a fictitious name statement as required by S.D.C.L. Ch. 37-11.

3

11.  At all times relevant to this Complaint, Defendant Donald R. Burns ("Burns") was a resident of Philip, South Dakota.

12.  At all times relevant to this Complaint, Defendant Philip Motor, Inc. was a South Dakota corporation with its principal place of business in Philip, South Dakota.  Burns was president of Philip Motors, Inc.

13.  At all times relevant to this Complaint, Defendant Dakota  Auto Supply ("DAS"), was a South Dakota corporation with its principal office located in Philip, South Dakota.  Burns was President of Dakota Auto Supply.

14.  At all times relevant to this Complaint, Badger Tree Moving Services, L.L.C., a/k/a Defendant Badger Tree Movers, L.L.C. (collectively referred to as "Badger") was a Colorado limited liability company, although it was not in good standing between September 27, 2004, and March 27, 2006.  Badger did work at the BHTF in South Dakota and was, in fact, a division of BHTF.

### SANDERS LEASE

15.  On or about November 1, 1997, Jerry Roseth and M. Joann Sanders ("Sanders") entered into a lease agreement ("Sanders Lease") for approximately 40 acres located in Caputa, Pennington County, South Dakota, with a legal description as follows:

4

A tract of land consisting of forty (40) acres situated in that part of Government Lot 5 of Section Six (6) lying south of the right-of-way of the Chicago Milwaukee & St. Paul Railway Co. and situated in that part of the Northeast Quarter of the Southwest Quarter (NE¼SW½) of Section Six (6) lying south of the Chicago Milwaukee & St. Paul Railway Co. right-of-way with all of the forgoing being located in T1S,R1OE of BHM, Pennington County, South Dakota said tract to be more specifically defined by Lessee with the aid of a Land Surveyor to be retained and paid for by the Lessee ("Property"). The Sanders Lease is attached hereto as Exhibit B.

16. The term of the Sanders Lease was for a period of nine (9) years from and after November 1, 1997.

17. Sanders leased the Property on a crop share basis.

18. Sanders was to receive 22.5 percent of all trees or other crops removed and/or marketed from the property during the period of the Sanders Lease.

19. Jerry Roseth was to receive 77.5 percent of all trees or other crops removed and/or marketed from the property during the period of the Sanders Lease.

20. Sanders was to pay 22.5 percent of all expenses (exclusive of management, labor, and administrative expense) necessary for purchasing, planting, cultivating, spraying, irrigating, and marketing the trees raised on the Property.

5

21. Jerry Roseth was to pay 77.5 percent of all expenses necessary for purchasing, planting, cultivating, spraying, irrigating, and marketing the trees raised on the Property.

22. Sanders was to pay 22.5 percent of the Property's real estate taxes.

23. Jerry Roseth was to pay 77.5 percent of the Property's real estate taxes.

24. Sanders was to pay 22.5 percent of all irrigation expenses associated with the Property.

25. Jerry Roseth was to pay 77.5 percent of all irrigation expenses associated with the Property.

26. Sanders was to pay 22.5 percent of all fencing expenses associated with the Property.

27. Jerry Roseth was to pay 77.5 percent of all fencing expenses associated with the Property.

28. The Sanders Lease contained the following provision: "Lessee agrees not to assign or subject this Lease or transfer the use or possession of the leased premises or any portion thereof, without the express written consent of the Lessor." Exhibit B at p. 3.

29. BHTF did not have a lease for the Property.

30. BHTF did not own any portion of the trees on the Property.

6

## FORM CCC-502B

31.  On or about October 15, 2001, BHTF executed a United States Department of Agriculture ("USDA")  form CCC-502B entitled "Farm Operating Plan For Payment Eligibility Review For A Joint Venture Or General Partnership." ("502").  Exhibit C.

32.  The accuracy of the information provided in the 502 was certified by each and every BHTF partner, i.e. Jerry G. Roseth, Luetta A. Roseth, Carrie M. Roseth (now known as Carrie M. Lurz), Paulette A. Combs (now known as Paulette A. Roseth), and John M. Combs.

33.  The 502 warns that incorrect information will result in forfeiture of payments and the assessment of a penalty.

34.  BHTF and its partners represented on the 502 that BHTF leased the land for the tree farm from Joann Sanders, even though Black Hills Tree Farm did not lease the land from Joann Sanders.

35.  BHTF and its partners represented on the 502 that the rental rate for the land leased by BHTF was "cash," even though the rental rate for the land leased was on a crop-share basis, not cash basis.

36.  BHTF and its partners represented that each partner would share equally in the management of the Tree Farm.

## FEDERAL CROP INSURANCE ACT

37.  Congress passed the Federal Crop Insurance Act ("FCIA") "to

promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance...." 7 U.S.C. § 1502. To carry out this purpose, Congress created the Risk Management Agency ("RMA"), which is an agency of the USDA, and the Federal Crop Insurance Corporation ("FCIC"), which is a wholly-owned government corporation, to administer the FCIA. *See* 7 U.S.C. § 1503. Congress authorized the FCIC to use private insurance companies in providing crop insurance to the nation's farmers. *See* 7 U.S.C. § 1508. These private insurance companies sell and service crop insurance policies through crop insurance agents. The Multiple Peril Crop Insurance ("MPCI") Program provides insurance coverage to farmers against natural crop losses.

38.  The FCIC reinsures the MPCI policies sold by the insurance companies to farmers by agents acting on behalf of the insurance companies. The FCIC subsidizes the premiums and reimburses the private insurance companies for the indemnity payments made to the policyholders and pays for the administrative and operating ("A&O") costs associated with the policy.

39.  In order to obtain MPCI coverage, an insured must sign an application for crop insurance and must submit the application through the crop insurance agent.  The insured must certify, on the application filed with the agent, that the information in the application is true and complete.

8

40. The insured is not entitled to insure crops that he/she does not own or have a share in.

41. Based upon the representations of the insured, the application is subject to acceptance by the insurance company.

42. In return for payment of the premium and subject to all the provisions in the policy, the insurance company agrees to provide crop insurance coverage to the insured, and the insurance company issues a MPCI policy to the insured. Insurance coverage applies only to the crop share of the individual, partnership, or corporation named on the application.

43. Each year the insured must certify on an acreage report all planted acreage of the insured crop in which that insured has a share.

44. The insurance company provides insurance coverage on the reported crop acreage and prints a Schedule of Insurance, which reflects the information certified by the insured.

45. The Schedule of Insurance reflects the information from the Acreage Report certified by the insured, and reviewed by the agent. The Schedule of Insurance also reflects the total premium due and payable for the insured crop. This total premium consists of the portion paid by the farmer and the premium subsidy paid by FCIC.

46. When a properly insured crop is damaged by an event covered by the policy, the insured notifies the insurance agent about the damage and the agent

9

in turn notifies the insurance company. Upon notice of such damages, the insurance company sends a crop adjuster to inspect the crop to determine the amount of loss.  Upon making a determination of damage, the crop adjuster completes a Production Worksheet, which indicates the cause of the crop damage, the amount of damage the field has sustained, and the amount of harvested and appraised production.

47.  The insured and the crop adjuster certify that the information contained on the Production Worksheet is true and complete and (a) the insured has a share in the insured crop; (b) the cause of damage to the insured crop; and (c) the amount of harvested and appraised production.  The insured and the crop adjuster further certify that the information on the Production Worksheet will be used to determine the insured's loss, if any, for the damage to the insured's crops.

48.  The insurance company pays indemnities on claims for damage to the insured's crop. The FCIC then reimburses the insurance company for the indemnities it pays.

## BHTF'S CROP INSURANCE APPLICATION

49.  BHTF has insured trees it alleges it owns since 2001 and has completed numerous applications for crop insurance as well as acreage reports.

50.  On September 30, 2003, BHTF executed a Multiple Peril Crop Insurance Application/Transfer-Cancellation form ("Application") and submitted

10

it to Rural Community Insurance Service ("RCIS"), a private insurance company
authorized to provide Federal Crop Insurance.

51.  By law, the Application contains several statements as follows:

### Application for Insurance Statement

Subject to the provisions of the Federal Crop Insurance
Act and the regulations issued under that Act, I hereby
apply for insurance on my share of the crops as
specified below for the crop year. . .

### Reinsurance Statement

This insurance policy is reinsured by the Federal Crop
Insurance Corporation (FCIC) under the provisions of
the Federal Crop Insurance Act, as amended
(7 U.S.C. 1501 et seq.)(Act). All provisions of the policy
and rights and responsibilities of the parties are
specifically subject to the Act. The provisions of the
policy are published in the Federal Register and
codified in chapter IV of title 7 of the Code of Federal
Regulations (CFR) under the Federal Register Act (44
U.S.C. 1501 et seq.), and may not be waived or varied
in any way by the crop insurance agent or any other
agent or employee of FCIC or the company. In the event
we cannot pay your loss, your claim will be settled in
accordance with the provisions of this policy and paid
by FCIC.  No state guarantee fund will be liable for your
loss. . .

### False Claim Statement

The information I have furnished on this form is
complete and accurate. I understand that any false or
inaccurate information may result in the sanctions
outlined in my policy and administrative, civil, and

criminal sanctions under 18 U.S.C. §§1006 and 1014,
7 U.S.C. § 1506, 31 U.S.C. §§ 3729 and 3730 and other
federal statutes.

52. In conjunction with the Application, BHTF submitted its Plant
Inventory Report ("PIV"), also known as acreage report, for the 2004 crop year.

53. The PIV contains a warning that false information submitted subjects
the insured to civil and criminal penalties, including the False Claims Act.

54. The PIV is used to compute values of destroyed or damaged
inventory.

55. The values in the PIV are derived in part from nursery catalogue
prices which are provided by the insured, in this case BHTF.

56. The catalogue prices provided by BHTF include the cost associated
with removing the trees from the ground, preparing them for transport, and
loading them unto trucks.  The costs do not include transportation.

## DAMAGE TO TREES

57. On or about  July of  2004, BHTF sustained damage to trees it
alleged to own as a result of a hail storm.

58. RCIS determined that all of the trees BHTF alleged to own sustained
a 100 percent loss.

## INDEMNITY

59. On or about October 7,  2004, BHTF executed a certification
statement wherein BHTF certified as follows: "All production with zero value

12

will be destroyed as soon as practical. Any utilization of the zero valued inventory/stock that generates any revenue would be a violation of this certification." Exhibit D.

60. On or about October 22, 2004, BHTF received an indemnity payment of $900,759 for the total loss of the trees BHTF alleged to have owned. This indemnity payment included the cost of removing the trees from the ground, preparing them for transport, and loading them unto trucks.

61. Since the crop insurance is reinsured by the United States, RCIS submitted its demand for reinsurance to the FCIC, an agency of the United States. The United States paid the claim.

62. Because the indemnity was paid by the United States, any overpayment or recovery related to the reinsured amount paid by the United States is an obligation to the United States.

## **SANDERS LAWSUIT**

63. Following receipt of the indemnity payment, a dispute arose between BHTF and Sanders regarding her 22.5 percent ownership interest in the trees. Consequently, Sanders filed a civil lawsuit against Jerry Roseth in the South Dakota state court, Pennington County.

64. BHTF refused to reimburse Sanders for her 22.5 percent ownership interest in the destroyed trees.

13

65. In the state court action, BHTF claimed that Sanders was not a named insured under the BHTF crop insurance policy.  Exhibit E.

66. In the state court action, BHTF stated under oath that it had a duty to destroy the  trees.

67. In the state court action, BHTF stated under oath that the cost to destroy the trees was around $300,000 or less.

68. In the state court action, BHTF provided three separate estimates for the destruction of trees as follows:  1)  Moose Landscaping, $229,865; 2) Big Tree Mover, $243,000; and 3) Badger, $216,000.

69. In the state court action, BHTF also stated under oath that it was in the process of  attempting to obtain permission from RCIS to allow a third party to remove the destroyed trees at no compensation to BHTF in lieu of destruction of the trees.

70. The state court action ultimately settled when Roseth settled by paying Sanders  $153,750, representing approximately 17 percent of the total indemnity payment received by BHTF.

## SALE OF DESTROYED TREES

71. In lieu of destroying the trees, BHTF inquired whether the trees could be sold by BHTF.  BHTF represented that the trees were worth fifty cents per tree.

14

72.  RCIS allowed BHTF to sell the trees, provided BHTF returned all revenues generated by the sale of trees to RCIS and, thus, to FCIC.

73.  RCIS also informed BHTF that it or its subsidiary companies or partners individually could not benefit from the sale of trees.

74.  On or about September 30, 2005, BHTF and its general partners and Burns entered into an agreement regarding the sale of trees to Burns at fifty cents for each tree removed by Burns, excluding those trees that would ultimately be destroyed.  Exhibit F.

75.  On or about September 30, 2005, BHTF and Burns entered into an agreement regarding the sale of certain equipment owned by BHTF.  Exhibit G.

76.  Burns retained the services of BHTF and its partner John Combs to consult on all aspects of a tree farm operation such as planting, harvesting, irrigation, marketing, and administration.  The payment for the aforementioned consulting services was to be 25 percent of the trees' profits.

77.  BHTF, through its partners and subsidiaries, marketed a substantial portion of the destroyed trees and sold them directly to its customers at costs that greatly exceeded fifty cents per tree.

78.  BHTF's customers received multiple invoices designed to hide the true sale price from RCIS and, thus, the United States.  Specifically, customers would typically receive the following invoices on a tree transaction:

a.    An invoice from BHTF reflecting a charge of fifty cents per tree;

b.    A separate invoice from Kenny G's (a tree service company from Colorado) or Badger for spading, and preparing for transport;

c.    A separate invoice from Badger for loading the trees; and

d.    A separate invoice from Burns' WHTF for the real sales price giving credit to the invoices listed above.

79.    BHTF submitted the fifty cents per tree invoice to RCIS for the purpose of determining BHTF's repayment amount and failed to submit the other invoices reflecting the true revenue generated as a result of the transaction.

80.    In other instances, Burns and WHTF marketed and sold the trees themselves at prices far exceeding fifty cents, yet BHTF represented to RCIS and, thus, the government that the true sales price for the trees was only fifty cents per tree.

81.    On or about November 15, 2006, BHTF executed a certification statement, certifying as follows:

> Insured hereby certifies that the invoices presented to RCIS dated 9-9-05 to 12-6-05 represents all monies derived from sale of trees from the indemnified inventory, and accounts for all trees sold after the occurrence of the loss. Insured understands the legal obligation to report all income or proceeds derived from the sale, whether wholesale or retail, or disposition of the inventory.

16

> Black Hills Tree Farm
> Policy No # 40-090-025080
> Signature /s/ Paulette Combs (Exhibit H).

82.  Pursuant to the certification statement described in paragraph 81 of this Complaint, BHTF represented that all monies derived from the sale of the indemnified trees amounts to $5,095.50, and reimbursed the RCIS and the United States in that amount.

83.  The monies derived from the sale of approximately 3,271 indemnified trees amounted to approximately $270,000.  Exhibit I details the sales of the indemnified trees.

84.  John Combs, individually as well as a general partner of BHTF, received payments for his consulting services related to the disposition of the indemnified trees.  These payments were in the form of cash, as well as loan forgiveness and/or loan reduction relating to vehicles purchased by Combs and/or BHTF from Philip Motor.

85.  Burns and WHTF used DAS to pay WHTF employees and PMI to compensate Combs and BHTF for the sale of trees.

## COUNT 1

## FALSE CLAIMS ACT

## 31 U.S.C. § 3729(a)(1)(B)

86.  The United States realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 85 of this Complaint.

17

87. Pursuant to 31 U.S.C. § 3729(a)(1)(B) "[a]ny person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States Government for a civil penalty of not less than [$5,500] and not more than [$11,000], plus 3 times the amount of damages which the government sustains because of the act of that person." [1]

88. By virtue of the specific acts described above, BHTF knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), specifically, a claim for payment by the FCIC for hail damage to crops not owned by BHTF and in which BHTF did not have a share, A&O costs associated with the handling of BHTF's policy, as well as insurance subsidies paid on behalf of BHTF.

89. As a result of BHTF's false or fraudulent acts described above, the United States has suffered damages in an amount to be determined at trial.

---

[1] Pursuant to a Congressional mandate applicable to civil penalties enforced by all federal agencies after September 29, 1999, are subject to a minimum penalty of $5,500 and a maximum penalty of $11,000.  *See* 28 C.F.R. Part 85 (implementing the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410,104 Stat. 890, as amended).

## COUNT 2

### FALSE CLAIMS ACT

### 31 U.S.C. § 3729(a)(3)

90. The United States realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 89 of this Complaint.

91. Pursuant to 31 U.S.C. § 3729(a)(3), "[a]ny person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid is liable to the United States Government for a civil penalty on not less than [$5,500] and not more than [$11,000], plus 3 times the amount of damages which the government sustains because of the act of that person."

92. By reason of the actions and conduct described herein, Defendants BHTF, Jerry G. Roseth, Luetta A. Roseth, Carrie M. Roseth (now known as Carrie M. Lurz), Paulette A. Combs (now known as Paulette A. Roseth), and John M. Combs conspired with each other and additional persons to obtain false or fraudulent claims allowed or paid by the United States in that they submitted false or fraudulent information on their application and associated documents for crop insurance and on their claim for crop loss in order for ineligible entities and individuals to receive indemnities that would ultimately be reimbursed by the United States through the FCIC, as well as policy subsidies, and A&O costs associated with the policy.

19

93. Each of the Defendants listed in paragraph 93 of this Complaint performed one or more acts to effect the object of the conspiracy.

94. As a result of the Defendants' conspiracy to defraud the United States, the United States has been damaged in an amount to be determined at trial.

## COUNT 3

### FALSE CLAIMS ACT

### 31 U.S.C. § 3729(a)(7)

95. The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1 through 94 of this Complaint.

96. Pursuant to 31 U.S.C. § 3729(a)(7), "[a]ny person who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government is liable to the United States Government for a civil penalty on not less than [$5,500] and not more than [$11,000], plus 3 times the amount of damages which the government sustains because of the act of that person."

97. BHTF had an obligation to return all monies generated from the sale of destroyed trees for which crop loss (indemnity) payments were received.

98. Defendants BHTF, Jerry G. Roseth, Luetta A. Roseth, Carrie M. Roseth (now known as Carrie M. Lurz), Paulette A. Combs (now known as

20

Paulette A. Roseth), John M. Combs, Don Burns, Badger, WHTF, Philip Motor, Inc., and DAS knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease BHTF's obligation to return all monies generated from the sale of trees, by using middle men and entities to conceal the true amount of monies generated from the sale of destroyed trees for which indemnity payments were received.

99. As a result of the above named Defendants' false or fraudulent acts described above, the United States has suffered damages in an amount to be determined at trial.

## COUNT 4

### CIVIL CONSPIRACY

100. The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1 through 99 of this Complaint.

101. Defendants BHTF, Jerry G. Roseth, Luetta A. Roseth, Carrie M. Roseth (now known as Carrie M. Lurz), Paulette A. Combs (now known as Paulette A. Roseth), John M. Combs, Don Burns, Badger, WHTF, Philip Motor, Inc., and DAS knowingly conspired to make, use, or caused to be made or used, a false record or statement to conceal, avoid, or decrease BHTF's obligation to return all monies generated from the sale of trees, by using middle men and entities to conceal the true amount of monies generated from the sale of trees for which indemnity payments were received.

102. Each of the Defendants listed in paragraph 102 of this Complaint performed one or more acts to effect the object of the conspiracy.

103. As a result of the Defendants' conspiracy to defraud the United States, the United States has been damaged in an amount to be determined at trial.

## COUNT 5

## COMMON LAW FRAUD

## OWNERSHIP OF CROPS

104. The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1 through 103 of this Complaint.

105. The false records or statements made or used by BHTF regarding the true ownership of the crop constitute a misrepresentation of material fact.

106. BHTF made these misrepresentations of material fact or caused them to be made with knowledge of their falsity or with reckless disregard for their truth.

107. BHTF made these misrepresentations of material fact, or caused them to be made, to RCIS knowing that the United States would rely on the accuracy of the representations in determining whether to provide coverage, whether to subsidize the policy payments, whether to pay crop insurance loss payments (indemnities) to RCIS on behalf of BHTF, and whether to pay the A&O costs associated with BHTF's policy.

22

108. BHTF intended that the United States, acting through FCIC, would act upon the false representation BHTF made or caused to be made.

109. The United States justifiably relied upon and acted upon BHTF's false representations by providing coverage, by providing policy payment subsidies, by reimbursing RCIS for crop loss (indemnity) payments made to BHTF as described above, and by paying A&O costs associated with the policy.

110. BHTF's actions have perpetrated a fraud upon the United States.

111. BHTF's actions have caused the United States to suffer damages in an amount to be determined at trial.

### COUNT 6

### COMMON LAW FRAUD

### TRUE AMOUNT OF MONIES GENERATED FROM CROP

112. The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1 through 111 of this Complaint.

113. The false records or statements made or used by Defendants BHTF, Jerry G. Roseth, Luetta A. Roseth, Carrie M. Roseth (n/k/a Carrie M. Lurz), Paulette A. Combs (now known as Paulette A. Roseth), John M. Combs, Don Burns, Badger, WHTF, Philip Motor, Inc., and DAS, and their concealment of the true facts surrounding the sales of the trees for which an indemnity payment was received as well as concealment of the true amount of monies

generated from such sales constitute misrepresentations and/or omissions of material fact.

114. The Defendants in this Complaint made these misrepresentations and/or omissions of material fact or caused them to be made with knowledge of their falsity or with reckless disregard for their truth.

115. The Defendants in this Complaint made these misrepresentations of material fact and/or omissions of material facts, or caused them to be made with the intent of avoiding BHTF's repayment obligation to RCIS and, thus, the United States.

116. The Defendants in this Complaint intended that the United States, acting through FCIC, would act upon the false representation and/or omissions made by the aforementioned Defendants in determining the amount of repayment due to the United States.

117. The United States justifiably relied upon and acted upon Defendants' false representations and/or omissions in determining the amount owed to it as a result of all revenues generated from the sale of the trees for which an indemnity payment was made.

118. The Defendants' actions have perpetrated a fraud upon the United States.

119. These Defendants' actions have caused the United States to suffer damages in an amount to be determined at trial.

24

## COUNT 7

## MISTAKE OF FACT

## OWNERSHIP OF CROPS

120.  The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1 through 119 of this Complaint.

121.  The United States provided reinsurance and paid crop indemnities as well as premium subsidies described above to RCIS.  In addition, the United States paid A&O costs to RCIS for its handling of BHTF's policy.

122.  The United States' erroneous beliefs were material to the amount of money the United States paid to RCIS on behalf of BHTF who did not have a share in the crops or, alternatively, did not have a 100 percent share in the crops and, thus, was ineligible for the payments it received.

123.  Because of these mistakes of fact, BHTF has received money from the United States to which it is not entitled.

124.  By reason of the erroneous payments made by the United States, the United States is entitled to damages in the amount of payments it erroneously made.

## COUNT 8

## MISTAKE OF FACT

## TRUE AMOUNT OF MONIES GENERATED FROM CROP

125. The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1through 124 of this Complaint.

126. BHTF had an obligation to return all monies generated from the sales of trees for which indemnity payments were made.

127. BHTF erroneously returned only fifty cents per tree sold, even though the sale price was substantially more.

128. BHTF, Badger , and John Combs erroneously failed to return all revenues generated as a result of spading the trees, preparing them for transport, and loading the trees.  The indemnity payment made by the United states included a payment for the services set forth in this paragraph.

129. WHTF and/or Burns erroneously believed that revenues generated as a result of selling the trees belonged to WHTF and/or Burns.

130. BHTF's, Badger's, John Combs', WHTF's and Burn's erroneous beliefs were material to the amount of money withheld by them and not rightfully returned to the United States.

131. By reason of the mistakes of fact made by BHTF, Badger, John Combs, WHTF, and Burns, the United States is entitled to damages in an amount to be determined at trial.

26

## COUNT 9

### MISTAKE OF LAW

### BHTF's SALE OF TREES TO BURNS AND/OR WHTF

132.  The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1 through 131 of this Complaint.

133.  Burns' agreement with BHTF and its general partners for the sale of trees is void *ab intio*, because the object of the agreement is illegal, i.e. a scheme to defraud the United States by creating a false record and concealing the true amount of monies generated from the sale of trees.

134.  As a result of the fraudulent scheme between Burns and BHTF, Burns and/or WHTF had no legal right to the monies or any portion thereof generated from the sale of trees.

135.  By reason of the illegal agreement between Burns and BHTF, the United States is entitled to all monies obtained by Burns and/or WHTF as a result of the sale of trees for which an indemnity payment was made.

### COUNT 10

### UNJUST ENRICHMENT

136.  The United States realleges and incorporates by reference as if fully set forth herein in paragraphs 1 through 135 of this Complaint.

137.  The United States made indemnity payments to RCIS based on claims submitted by BHTF.  The indemnity payments compensated BHTF for

27

the value of the trees and the costs associated with spading the trees, preparing them for transport, as well as loading them.

138.  The United States was entitled to a refund of all monies generated from the sale of destroyed trees for which it already made an indemnity payment.

139.  BHTF, Badger, Burns, WHTF, and John Combs have not returned to the United States all monies generated from the sale of the destroyed trees and, thus, have unjustly enriched themselves.

140.  By reason of the aforementioned Defendants' failure to return to the United States all monies generated as a result of the sale of the trees, the United States has suffered damages at an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States demands and prays that judgment be entered in its favor and against Defendants as follows:

1.  Under Count 1, for treble damages and for civil penalties up to $11,000 for each materially false record, statement, or representation knowingly made, used, or caused to be made or used to get a false of fraudulent claim allowed or paid;

2.  Under Count 2, for treble damages and for civil penalties up to $11,000 for each false or fraudulent claim and for each materially false record,

28

statement or representation knowingly made, used, or caused to be made or used during the course of Defendant's conspiracy to defraud the United States.

3. Under Counts 3 and 4, for treble damages and for civil penalties up to $11,000 for each false record or statement knowingly used, or caused to be made or used to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States.

4. Under Counts 5 and 6, for compensatory and punitive damages in an amount to be determined at trial.

5. Under Counts 7, 8, 9, and 10 for damages in an amount to be determined at trial.

6. Interest and costs; and

7. For any other legal and/or equitable relief appropriate under the circumstances.

**THE UNITED STATES REQUESTS A TRIAL BY JURY**

Dated this 26th day of May, 2009.

MARTY J. JACKLEY
United States Attorney
By:

ROBERT GUSINSKY
Assistant U.S. Attorney
515 Ninth Street, Suite 201
Rapid City, SD 57701
(605) 342-7822
(605) 342-1108 (fax)
Robert.Gusinsky@usdoj.gov

29