UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIV. 09-5049-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | MOTION TO DISMISS |
| BLACK HILLS TREE FARM, a | ) | SECOND AMENDED |
| South Dakota General | ) | COMPLAINT AS TO |
| Partnership; | ) | CERTAIN DEFENDANTS |
| JERRY G. ROSETH; | ) | |
| LUETTA A. ROSETH; | ) | |
| CARRIE M. ROSETH, n/k/a | ) | |
| CARRIE M. LURZ; | ) | |
| PAULETTE A. COMBS, n/k/a | ) | |
| PAULETTE A. ROSETH; | ) | |
| JOHN M. COMBS; | ) | |
| WESTERN HILLS TREE FARM; | ) | |
| DONALD R. BURNS; | ) | |
| PHILIP MOTOR, INC., a South | ) | |
| Dakota Corporation; | ) | |
| DAKOTA AUTO SUPPLY, a South | ) | |
| Dakota Corporation; and | ) | |
| BADGER TREE MOVERS, L.L.C., | ) | |
| a Colorado Limited Liability | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Plaintiff United States of America filed an amended complaint.

(Docket 21).  Defendants Western Hills Tree Farm ("WHTF"), Donald R.

Burns, Philip Motor, Inc., and Dakota Auto Supply (collectively "WHTF

defendants") filed a motion to dismiss the amended complaint under Fed. R.

Civ. P. 12(c).  (Docket 37).  During the process of briefing this motion,
WHTF defendants consented to plaintiff filing a second amended complaint.
(Docket 49).  Plaintiff's second amended complaint (Docket 51) was then
filed.  WHTF defendants' supplemental memorandum (Docket 53) asks the
court to apply their earlier briefing to the second amended complaint.  For
the reasons stated below, the motion to dismiss is denied.

## PLAINTIFF'S ALLEGATIONS

Under Fed. R. Civ. P. 8(a)(2), to state a claim for relief the complaint
"must contain . . . (2) a short and plain statement of the claim showing that
the pleader is entitled to relief . . . ."  This is required in "order to give the
defendant fair notice of what the . . . claim is and the grounds upon which it
rests . . . ."  Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007)
(internal quotation marks omitted).  "[A] plaintiff's obligation to provide the
grounds of his entitle[ment] to relief requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action
will not do . . . ."  Id. (internal quotation marks omitted).  Rule 12(c) provides
that "[a]fter the pleadings are closed--but early enough not to delay trial--a
party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  To
analyze the motion to dismiss, plaintiff's factual allegations must be taken
as true.  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009);

<u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).[1]  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Twombly</u>, 550 U.S. at 555.  <u>See also</u> <u>Crooks v. Lynch</u>, 557 F.3d 846, 848 (8th Cir. 2009) (the court must review a "motion to dismiss for failure to state a claim, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of [the plaintiff], the nonmoving party.").  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  <u>Twombly</u>, 550 U.S. at 555.  "The pleadings must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact) . . . ."  <u>Id.</u> (emphasis in original).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  <u>Id.</u> at 556.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  <u>Iqbal</u>, 129 S. Ct. at 1950.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

---

[1]Since <u>Twombly</u> and <u>Iqbal</u> are the most significant precedents on this issue, any internal quotations or citations to earlier cases are being omitted throughout the remainder of this decision.

assumption of truth.   While legal conclusions can provide a
framework of a complaint, they must be supported by factual
allegations.   When there are well-pleaded factual allegations, a
court should assume their veracity and then determine whether
they plausibly give rise to an entitlement to relief.

Id.

"The plausibility standard requires a plaintiff to show at the pleading

stage that success on the merits is more than a 'sheer possibility.'  It is not

however, a 'probability requirement.' " Braden, 588 F.3d at 594 (citing

Iqbal, 129 S. Ct. at 1949) (citing Twombly, 550 U.S. at 570).  "A complaint

states a plausible claim for relief if its factual content . . . allows the court to

draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id.  "[T]he complaint should be read as a whole, not

parsed piece by piece to determine whether each allegation, in isolation, is

plausible." Id.

Plausibility . . . does not imply that the district court should
decide whose version to believe, or which version is more likely
than not.  Indeed, the Court expressly distanced itself from the
latter approach in Iqbal, "the plausibility standard is not akin to
a probability requirement." 129 S. Ct. at 1949 (quotation marks
omitted).  As we understand it, the Court is saying instead that
the plaintiff must give enough details . . . to present a story that
holds together. . . .*[C]ould* these things have happened, not *did*
they happen.

Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in

original).  "In assessing a motion [to dismiss] . . . , a court should . . . not

dismiss [a] complaint 'unless it appears beyond doubt that the [United

4

States] can prove no set of facts in support of [its] claim which would entitle [it] to relief.' " Holloway v. Lockhart, 792 F.2d 760, 761 (8th Cir. 1986) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

"It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000). The second amended complaint contains eleven causes of action against all defendants. (Docket 51). The United States' brief acknowledges there are "two sets of defendants and two separate but related instances of fraud. . . ." (Docket 41, p. 2). The first set of defendants, those being the Black Hills Tree Farm ["BHTF"], John Combs, Jerry Roseth, Luetta Roseth, Carrie M. Lurz, Paulette Roseth, and Badger Tree Movers, LLC., are commonly referred to as the "Black Hills Tree Farm Defendants" ("BHTF defendants"). Id. The second set of defendants, those being Western Hills Tree Farm, Donald Burns, Philip Motor, Inc., and Dakota Auto Supply, are commonly referred to as the "Western Hills Tree Farm Defendants" ("WHTF defendants"). Id.

The separate, but related, claims are generally referred to as the "procurement fraud," that is, those causes of action relating to the procurement of crop insurance and collection of an indemnity payment, and the "disposition fraud," that is, those causes of action related to the

5

disposition of trees after an indemnity payment has been made to BHTF defendants.  Id.  Only BHTF defendants are implicated in the procurement fraud counts.  Id.  Both BHTF defendants and WHTF defendants are implicated in the disposition fraud counts.  Id.

For purposes of considering WHTF defendants' motion to dismiss under Rule 12(c), all factual allegations from plaintiff's second amended complaint are deemed to be true.  Holloway, 792 F.2d at 761.  For a sense of continuity, a recitation of the procurement fraud counts is necessary.[2] Those facts, drawn from plaintiff's second amended complaint, are as follows.

## PROCUREMENT FRAUD FACTS

In November of 1997, Jerry Roseth entered into a lease arrangement with Joann Sanders (the "Sanders Lease") for forty acres of real estate in Caputa, Pennington County, South Dakota.  (Docket 51, ¶ 15).  This was a share-crop arrangement.  Id. at ¶ 17.  Basically, Ms. Sanders was to receive 22.5 percent of the income generated from the sale of trees, with Mr. Roseth receiving the remaining 77.5 percent.  Id. at ¶¶ 18 and 19.  Expenses would be allocated at these same percentages.  Id. at ¶¶ 20-27.  BHTF did not have

---

[2]Again, it is noted the WHTF defendants are **not** implicated in the procurement fraud counts.  (Docket 41, pp. 2 and 4).

a lease for this property and did not own any portion of the trees on the property.  Id. at ¶¶ 29 and 30.

On October 15, 2001, BHTF defendants executed a United States Department of Agriculture form CCC-502B entitled "Farm Operating Plan for Payment Eligibility Review For a Joint Venture or General Partnership" ("USDA 502").  Id. at ¶ 31.  BHTF defendants represented on the USDA 502 that the rental arrangement was for cash, even though the Sanders Lease was on a share-crop basis.  Id. at ¶ 35.

On September 30, 2003, BHTF executed a multiple peril crop insurance application ("MPCI application") with Rural Community Insurance Service ("RCIS"), a private insurance company authorized to provide federal crop insurance.  Id. at ¶ 50.  With the MPCI application, BHTF submitted a plant inventory report ("PIV"), also known as an acreage report, for its 2004 crop year.  Id. at ¶ 52.

In July of 2004, according to RCIS, a hail storm caused a 100 percent loss to BHTF's tree crop.  Id. at ¶¶ 57 and 58.  In processing its loss claim, BHTF certified that "[a]ll production with zero value will be destroyed as soon as practical.  Any utilization of the zero valued inventory/stock that generates any revenue would be a violation of this certification."  Id. at ¶ 59.

On October 22, 2004, BHTF was paid $900,759 for the total loss of the trees.  Id. at ¶ 60.  This payment included funds for the cost of tree removal, preparation for transport and loading onto trucks.  Id.

RCIS submitted its reinsurance claim to the Federal Crop Insurance Corporation ("FCIC") and this agency of the United States paid the full amount of the claim.  Id. at ¶ 61.  Because this reinsurance (indemnity) was paid by the United States, any overpayment or recovery related to the claim becomes an obligation to the United States.  Id. at ¶ 62.

Following payment of the tree loss claim to BHTF, a dispute arose with Ms. Sanders concerning her interest in the proceeds, and she filed a lawsuit in state court.  Id. at ¶ 63.  In that litigation, BHTF stated, under oath, the cost to destroy the trees was about $300,000.  Id. at ¶ 67.  BHTF submitted estimates ranging from $216,000 to $243,000 for this work.  Id. at¶ 68.  BHTF also stated, under oath, in that state court litigation that it was negotiating with RCIS to allow a third party to remove the trees, in lieu of destruction of them, with no payment to BHTF.  Id. at ¶ 69.  The state-court litigation settled when Mr. Roseth paid Ms. Sanders $153,750, representing about 17 percent of the RCIS payment received by BHTF.  Id. at ¶ 70.

### DISPOSITION FRAUD FACTS

RCIS eventually agreed to allow BHTF to sell the damaged trees at 50 cents per tree, so long as all revenues were paid to RCIS (and thus to FCIC). Id. at ¶¶ 71 and 72.  RCIS advised BHTF that neither BHTF, nor any subsidiary company, nor its partners could benefit from the sale of the trees.  Id. at ¶ 73.

In September of 2005, BHTF negotiated an agreement with Burns for the sale, at 50 cents per tree, of every tree Burns removed from the property.  Id. at ¶ 74.  That agreement had an effective date of "September 30, 2005, notwithstanding any subsequent date such agreement is memorialized in writing."  (Docket 51-6, p. 1).  The agreement further acknowledged that "[a]ny duty on the part of [BHTF] to remit such sums [50 cents per tree] pursuant to insurance settlement shall be the duty of [BHTF]."  Id.

During that same time frame, BHTF agreed to sell Burns the tree farm equipment for $57,350.  (Docket 51, ¶ 75; Docket 51-7, p. 1).  That agreement also contained the same effective date language of "September 30, 2005, notwithstanding any subsequent date such agreement is memorialized in writing."  (Docket 51-7, p. 1).  Burns also retained BHTF and its partner, John Combs, to provide consulting services for all aspects

9

of the operation of a tree farm.  (Docket 51, ¶ 76).  The consulting services were to be paid at 25 percent of the tree sales profits.  Id.

BHTF, through its partners and subsidiaries, sold a significant number of the trees directly to customers at prices greatly exceeding 50 cents per tree.  (Docket 51, ¶ 77).  By way of representative transactions, the United States' second amended complaint describes with specificity two sales transactions.

The first transaction involved Wyoming Reclamation & Enterprises ("WRE") of Cheyenne, Wyoming.  (Dockets 51, ¶ 78B and 51-13).  On September 9, 2005, BHTF sold 78 trees to WRE at 50 cents per tree.  Id. WRE paid BHTF $39 on October 18, 2005.  Id.  By a separate undated invoice, WHTF billed WRE for the same 78 trees.  Id.  The gross charges by WHTF were $5,317.  (Docket 51-14).  Deductions were $2,028 paid to Kenny G,[3] $546 paid to Badger Tree Moving, and $39 to BHTF, leaving a net invoice due to WHTF of $2,704.  Id.   WRE paid this net invoice to WHTF. Id.

On September 17, 2005, BHTF sold 51 trees to Commercial Landscapers of Kansas City, Kansas.  (Dockets 51, ¶ 78A and 51-10). Commercial Landscapers paid BHTF $25.50, at 50 cents per tree, by a check dated October 18, 2005.  Id.  By an undated invoice, WHTF billed

---

[3]A tree service company in Colorado.  (Docket 51, ¶ 78(b)).

10

Commercial Landscapers for the same 51 trees.  (Dockets 51, ¶ 78A and 51-11).  This WHTF invoice was for the gross sum of $4,705.  (Docket 51-11).  The invoice reflected deductions for Kenny G of $1,428, Badger Tree Moving of $357, and BHTF for $25.50.  This left a net invoice payable to WHTF of $2,894.50.  Id.  Commercial Landscapers paid that sum to WHTF on November 7, 2005.  (Docket 51-12).

The sale of 3,271 of these trees generated approximately $270,000.  (Docket 51, ¶ 83).  Attached to the second amended complaint is a detailed itemization of those tree sales.  Id.  See also Docket 51-9.  It is alleged that BHTF submitted invoices to RCIS at 50 cents per tree to support BHTF's repayment obligation and did not submit invoices reflecting the true revenue generated.  (Docket 51, ¶ 79).  By a November 2006, certification, BHTF declared that all revenue generated from trees sold between September 9 and December 6 of 2005, was paid to RCIS.  (Docket 51, ¶ 82).  With that certification, BHTF repaid $5,905.50 to RCIS and the United States.  Id.

The second amended complaint alleges that WHTF collected and retained proceeds from the sale of trees which it never owned and did not sell.  (Docket 51, ¶ 78D).  BHTF and WHTF are alleged to have "entered into an illicit accord to create false records in an effort to hide the true proceeds derived from sales of indemnified trees . . . ."  Id. at ¶ 78E.  It is alleged the September 30, 2005, agreement between BHTF and WHTF was intended to

11

conceal that illicit accord.  Id. at ¶¶ 78E and 78F.  The government alleges that "WHTF acted knowingly when it participated in an overall scheme along with BHTF to hide from the United States the true value of trees for which an indemnity payment was received . . . [which] WHTF knew . . . would generate a repayment obligation by BHTF."  Id. at ¶ 78G.

Defendant John Combs was paid for his consulting services relating to the disposition of the indemnified trees.  Id. at ¶ 84.  Burns used defendant Dakota Auto Supply's funds to pay WHTF employees and defendant Philip Motor, Inc.'s, money to pay defendant John Comb's consulting fees and BHTF for the sale of trees.  Id. at ¶ 85.

The procurement fraud counts are:

| | | |
|---|---|---|
| Count 1 | False Claims Act<br>31 U.S.C. § 3729(a)(1)(B); and | |
| Count 2 | False Claims Act<br>31 U.S.C. § 3729(a)(3). | |

The disposition fraud counts are:

| | | |
|---|---|---|
| Count 3 | False Claims Act<br>31 U.S.C. § 3729(a)(7); | |
| Count 4 | Civil Conspiracy; | |
| Count 5 | Common Law Fraud–Ownership of<br>Crops [against BHTF defendants only]; | |
| Count 6 | Common Law Fraud–True<br>Amount of Monies Generated<br>From Crop; | |

Count 7     Mistake of Fact–Ownership
of Crops [against BHTF
defendants only];

Count 8     Mistake of Fact–True Amount of
Monies Generated From Crop;

Count 9     Mistake of Law–BHTF's Sale of Trees to
Burns and/or WHTF;

Count 10    Unjust Enrichment; and

Count 11    Violation of 12 U.S.C. § 1833a.

For purposes of resolving WHTF defendants' motion to dismiss, only Counts

3, 4, 6, 8, 9, 10, and 11 will be addressed.

## ANALYSIS

1.    COUNT THREE–FALSE CLAIMS ACT

Count three of the second amended complaint alleges both groups of

defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(7).  That

provision was rewritten in 2009, so the language of the section in effect at

the time of the alleged misconduct must be used to judge the sufficiency of

plaintiff's pleading.  The False Claims Act provision states:

> (a) Liability for certain acts.  Any person who—
> . . .
> (7)    knowingly makes, uses, or causes to be made or
> used, a false record or statement to conceal, avoid, or
> decrease an obligation to pay or transmit money or
> property to the Government,
> is liable to the United States Government for a civil penalty of not
> less than $5,000 and not more than $10,000, plus 3 times the
> amount of damages which the Government sustains because of
> the . . . person . . . .

31 U.S.C. § 3729(a)(7) (as amended July 5, 1994).  "[S]ince the False Claims

Act is obviously an anti-fraud statute, complaints brought under it must

comply with Fed. R. Civ. P. 9(b)."  United States ex rel. Kinney v. Stoltz, 327

F.3d 671, 674 (8th Cir. 2003).  Rule 9(b) requires that "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances

constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b)'s

particularity requirement demands a higher degree of notice than that

required for other claims, and is intended to enable the defendant to

respond specifically and quickly to the potentially damaging allegations."

United States ex rel. Joshi v. St. Luke's Hospital, Inc., 441 F.3d 552, 556

(8th Cir. 2006) (internal quotation marks omitted).  "To satisfy the

particularity requirement of Rule 9(b), the complaint must plead such facts

as the time, place, and content of the defendant's false representations, as

well as the details of the defendant's fraudulent acts, including when the

acts occurred, who engaged in them, and what was obtained as a result."

Id.

The second amended complaint satisfies the requirements of Rule 9(b)

by specifically alleging the BHTF-WHTF contract was a strawman agreement

through the creation of an "illicit accord" to conceal the true value of sale

proceeds.  (Docket 51, ¶¶ 78E and 78F).  The representative transactions

alleged in the second amended complaint specifically articulate the acts

which occurred, who participated and the results obtained.  United States

ex rel. Joshi, 441 F.3d at 556.

The September 30, 2005, BHTF-WHTF agreement required Burns to

make an initial payment of $20,000 to BHTF on that date.  (Docket 51-7, p.

2).  By way of illustration, the representative transactions specifically

described in the second amended complaint and the other "pre-closing"

sales identified in the government's Exhibit I (Docket 51-9) allowed Burns

and the WHTF defendants to recoup over $9,000 of that initial down-

payment before the contract was even contemplated to go into effect.

**Commercial Landscapers**
09/17/05 paid BHTF $25.50 (51 trees @ 50 cents per tree)

| | | |
|---|---|---|
| Separate invoice submitted by WHTF | $ 4,705.00 | |
| Less separate billing by Kenny G | -1,428.00 | |
| Less separate billing by Badger Tree Moving | -  357.00 | |
| Less separate billing by BHTF | -    25.50 | |
| Net WHTF invoice | $ 2,894.50 | |
| Less 25% fee to John Combs | -  723.62 | |
| Net adjusted WHTF income | | $2,170.88 |

**Wyoming Reclamation**
09/09/05 paid BHTF $39 (78 trees @ 50 cents per tree)

| | | |
|---|---|---|
| Separate invoice submitted by WHTF | $ 5,317.00 | |
| Less separate billing by Kenny G | -2,028.00 | |
| Less separate billing by Badger Tree Moving | -  546.00 | |
| Less separate billing by BHTF | -    39.00 | |
| Net WHTF invoice | $2,704.00 | |
| Less 25% fee to John Combs | -  676.00 | |
| Net adjusted WHTF income | | 2,028.00 |
| Other pre-closing sales with a net analysis | | |
| Jerry Ingram | | 339.20 |
| Ram Trucking | | 4,668.00 |
| Pre-closing WHTF income | | $ 9,206.08 |
| | | ========= |

With a $20,000 initial payment due to BHTF on September 30, 2005, the WHTF defendants allegedly had already recouped $9,206.08 of that obligation.

Examined from the view of BHTF defendants, this alleged illicit accord generated $20,000 they would not have otherwise received.  Using the same allegations from the second amended complaint, RCIS and FCIC would have been the benefactors, not BHTF defendants:

**Commercial Landscapers**

| | | |
|---|---|---|
| Sale of trees | | |
| 51 @ 50 cents per tree | | $    25.50 |
| 51 @ $92.25 average | | 4,705.00 |
| Less | | $ 4,730.50 |
| Kenny G | $ 1,428.00 | |
| Badger Moving | 357.00 | |
| | | - 1,785.00 |
| Net BHTF Income | | $ 2,945.50 |
| Less payment to RCIS & FCIC | | - 2,945.50 |
| Adjusted net BHTF income | | $      0.00 |

**Wyoming Reclamation**

| | | |
|---|---|---|
| Sale of trees | | |
| 78 @ 50 cents per tree | | 39.00 |
| 78 @ $68.167 average | | 5,317.00 |
| | | $ 5,356.00 |
| Less | | |
| Kenny G | $ 2,028.00 | |
| Badger Moving | 546.00 | |
| | | -2,574.00 |
| Net BHTF income | | $ 2,752.00 |
| Less payment to RCIS & FCIC | | - 2,752.00 |
| Adjusted net BHTF income | | $      0.00 |

"The [False Claims Act] requires that defendants make false claims 'knowingly' by (1) having actual knowledge of falsity of the claims, (2) acting in deliberate ignorance of the falsity of the claims, or (3) acting in reckless disregard of the falsity of the claims." United States ex rel. Hixson v. Health Management Systems, Inc., 657 F. Supp. 2d 1039, 1056-57 (S.D. Iowa 2009).  WHTF defendants claim in support of their Rule 12(c) motion "there is no allegation that [they] had any participation in the creation of reports, beyond mere speculation." (Docket 38, p. 10).  They assert "[t]here is no factual allegation that [they] had actual knowledge of the falsity of the claims; acted in deliberate indifference; or were acting in reckless disregard." Id.

The second amended complaint specifically identifies the BHTF-WHTF agreement required the BHTF defendants to take sole responsibility for resolving the "insurance settlement" when the trees were being purchased at 50 cents per tree by WHTF defendants.  (Docket 51-6, p. 1).  Generating over $9,000 on tree sales when WHTF defendants had not yet formally entered into an agreement with the BHTF defendants would certainly raise the level of suspicion of wrongdoing from "mere speculation" to "*could* these things have happened, not *did* they happen." Swanson, 614 F.3d at 404 (emphasis in original).  It is sufficiently alleged WHTF defendants actually knew of the falsity of the BHTF claims to RCIS, or were deliberately

17

ignorant, or recklessly disregarded what was going on.  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'  It is not however, a 'probability requirement.'"  <u>Braden</u>, 588 F.3d at 594 (citing <u>Iqbal</u>, 129 S. Ct. at 1949) (citing <u>Twombly</u>, 550 U.S. at 570).  Whether wrongful conduct occurred, in fact, is for a jury to decide.  The government sufficiently pled the False Claims Act count against WHTF defendants.

2.    COUNT FOUR–CIVIL CONSPIRACY

"The components of actionable fraud are . . .  a matter of substantive law and therefore, since <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, . . . are to be determined for this case by the law of [the state] where the wrong, if any, took place."  <u>Hanson v. Ford Motor Co.</u>, 278 F.2d 586, 590 (8th Cir. 1960).  Thus, the common law claims against WHTF defendants must be determined by the law of the state of South Dakota where the alleged misconduct, if any, occurred.

In South Dakota, "[a] civil conspiracy is, fundamentally, an agreement to commit a tort."  <u>Kirlin v. Halverson</u>, 2008 SD 107 ¶ 59, 758 N.W.2d 436, 455.  The essential elements of the tort of civil conspiracy which a plaintiff must allege are:

(1)    [the involvement of] two or more persons;

(2)    an object to be accomplished;

18

(3)     a meeting of the minds on the object or course of
        action to be taken;

(4)     *the commission of one or more unlawful overt acts*; and

(5)     damages as the proximate result of the conspiracy.

Id. (emphasis in original).  The tort of civil conspiracy "is not an independent

cause of action, but is sustainable only after an underlying tort claim has

been established."  Id. (internal quotation marks omitted).

The government's civil conspiracy claim is that BHTF defendants and

WHTF defendants "knowingly conspired to make [or] use . . . a false record

or statement to conceal, avoid, or decrease BHTF's obligation to return all

monies generated from the sale of trees, by using middle men and entities to

conceal the true amount of monies generated from the sale of trees for

which indemnity payments were received." (Docket 51, ¶ 101).  The

government further alleged that each of the defendants "performed one or

more acts to effect the object of the conspiracy."  Id. at ¶ 102.

The second amended complaint asserts these two separate groups of

defendants may have had a meeting of the minds to cause the commission

of another tortious act.  See Kirlin, 2008 SD 107 at ¶ 59, 758 N.W.2d at

455.  These allegations are not an assertion of lawful parallel conduct, but

rather are factual assertions that the defendants were actively engaged in an

unlawful civil conspiracy.  See Twombly, 550 U.S. at 557 ("when allegations

of parallel conduct are set out in order to make a [conspiracy] claim, they

19

must be placed in a context that raises a suggestion of a preceding agreement . . . .").

The second amended complaint alleges the two groups of defendants were engaged in specifically described conduct. This strawman relationship satisfies the allegations necessary to create an independent cause of action for civil conspiracy. Kirlin, 2008 SD 107 at ¶ 59, 758 N.W.2d at 455.

3.   COUNT SIX–COMMON LAW FRAUD

"In South Dakota, a civil pleading based on fraud is sufficiently particular if it alleges 'all of the essential elements of actionable fraud.' " North American Truck & Trailer, Inc. v. M.C.I., 2008 SD 45, ¶10, 751 N.W.2d 710, 713 (citing Holy Cross Parish v. Heuther, 308 N.W.2d 575, 576 (S.D. 1981) (internal quotation marks omitted). The South Dakota Supreme Court applies the " 'elements test' to determine whether the plaintiff's deceit claim alleged fraud with sufficient particularity." Id. at 2008 SD 107 ¶10, 751 N.W.2d at 714 (internal citation omitted). To do so, the South Dakota Supreme Court examined the elements of the tort claim of deceit:

A representation made as a statement of fact, which is untrue and intentionally or recklessly made

1.   With intent to deceive for the purpose of inducing the other party to act upon it;
2.   Reliance upon the untrue statement of fact;
3.   Resulting in injury or damage.

Id.

"Intentional misrepresentation is defined by SDCL 20-10-1 as a wilful deception made with the intention of inducing a person 'to alter his position to his injury or risk.' " Ducheneaux v. Miller, 488 N.W.2d 902, 914-15 (S.D. 1992).  "More than a finding of knowledge of falsity is required to warrant a conclusion of liability based on intentional misrepresentation . . . . an action for deceit requires proof that the misrepresentations were material . . . and that the plaintiff relied on the misrepresentations to his detriment."  Id. at 915.  The South Dakota Supreme Court has held that "misrepresentation is essentially a false statement of material fact."  Fuller v. Croston, 2006 SD 110 ¶ 40, 725 N.W.2d 600, 611 (internal quotation marks omitted).  Reliance on the alleged false statement is necessary as proof of liability.  Id.

The government's second amended complaint sufficiently alleges facts which are in the nature of intentional misrepresentation.  The pleadings identify WHTF defendants as actively participating in fraud by "their concealment of the true facts surrounding the sales of the trees . . . as well as concealment of the true amount of monies generated from such sales . . . ."  (Docket 51, ¶ 113).  These actions "constitute misrepresentations and/or omissions of material fact."  Id.

The second amended complaint adequately satisfies the three other elements of actionable fraud in that:

    1.     The representations [described with particularity earlier] were made with the intent to deceive the

United States, acting through the FCIC, to rely upon the false representations or omissions in determining the repayment due;

2.   The United States relied on those false representations or omissions in setting the repayment calculation; and

3.   The United States suffered damages when the true value of the sale proceeds were not repaid to RCIS and FCIC.

(Docket 51, ¶¶ 115-119).  See also North American Truck & Trailer, Inc., 2008 SD 45 at ¶10, 751 N.W.2d at 714.

The same facts and trail of documents discussed in considering the False Claims Act allegations in count three apply here.  The second amended complaint sufficiently described the conduct, actions, and facts allegedly used to perpetrate fraud on the United States.  The factual allegations of the government's complaint satisfy the "heightened pleading standard" required by Rule 9(b).  Twombly, 550 U.S. at 569 n. 14.  It presents the court with adequate facts, as required by Rule 8(a)(2), which would allow the court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  Braden, 588 F.3d at 594.  Plaintiff has stated a claim for fraud and intentional misrepresentation by WHTF defendants.

4.    COUNT EIGHT–MISTAKE OF FACT

The government alleges WHTF defendants "erroneously believed that revenues generated as a result of selling trees belonged" to them.  (Docket 51, ¶ 129).  The government also alleges this mistake of fact was "material to the amount of money withheld by them and not rightfully returned to the United States."  Id. at ¶ 130.  Because of this mistake of fact, the United States suffered damages.   Id. at ¶ 131.

The United States alleges the BHTF-WHTF contract was a strawman agreement, the creation of an "illicit accord," to conceal the true value of the sale proceeds.  (Docket 51, ¶¶ 78E and 78F).  While the United States is not alleged to be the actual owner of the trees, it is a statutory lien holder entitled to indemnification from any proceeds generated from those assets.  "Because the indemnity was paid by the United States, any overpayment or recovery related to the reinsured amount paid by the United States is an obligation to the United States."  (Docket 51, ¶ 62).

While the government alleges WHTF defendants specifically knew of this obligation, the United States may also claim, in the alternative, WHTF defendants were mistaken about their right to dispose of the indemnified trees and pocket the proceeds.  Unlike the False Claims Act allegations which include financial penalties, a mistake of fact claim would require only the return of the improperly withheld funds.  If the BHTF-WHTF agreement

was an illicit accord, then the United States rightfully would be a legal

beneficiary of the purpose of that contract–the sale of indemnified trees.

Accordingly, the United States would be entitled to the mistakenly withheld

proceeds generated by WHTF defendants.  Count eight adequately states a

legal claim and puts WHTF defendants on notice of the nature of the claim.

Twombly, 550 U.S. at 555.

5.      COUNT NINE–MISTAKE OF LAW

        The United States alleges the BHTF-WHTF agreement was an illicit

accord, and thus void *ab initio*.  (Docket 51, ¶ 133).  If the agreement was

void as a matter of law, then BHTF defendants were still the parties entitled

to and required to dispose of the indemnified trees while recognizing their

obligations to RCIS and the FCIC.  For the reasons stated above, the second

amended complaint adequately alleges a legal claim against WHTF

defendants.  Twombly, 550 U.S. at 555.

6.      COUNT TEN–UNJUST ENRICHMENT

        "Unjust enrichment is an equitable doctrine."  Mack v. Mack, 2000 SD

92, ¶ 27, 613 N.W.2d 64, 69.  "It occurs when one confers a benefit upon

another who accepts or acquiesces in that benefit, making it inequitable to

retain that benefit without paying."  Id. (internal quotation marks omitted).

"When unjust enrichment is found, the law implies a contract, which

requires the defendant to compensate the plaintiff for the value of the

24

benefit conferred."  Id.  The elements which must be proven to support an

unjust enrichment claim are:

> (1)     a benefit was received;
> (2)     the recipient was cognizant of that benefit; and
> (3)     the retention of the benefit without reimbursement would
>         unjustly enrich the recipient.

Id.  "Enrichment is unjust if it is a result of money paid by mistake."  Parker

v. Western Dakota Insurors, Inc., 2000 SD 14, ¶ 17, 605 N.W.2d 181, 187

(internal quotation marks omitted).

The United States alleges its indemnity payments properly

compensated BHTF defendants for their losses.  (Docket 51, ¶ 137).

Accordingly, the government "was entitled to a refund of all monies

generated from the sale of [indemnified] trees . . . ."  Id. at ¶ 138.  BHTF

defendants allegedly conferred a benefit on WHTF defendants by allowing, or

at least suggesting, they sell the indemnified trees at a markup over what

BHTF was obligated to reimburse the United States.  Their agreement

specifically referenced BHTF defendant's obligations to the government.

Allowing WHTF defendants to retain the funds generated from the true value

of the indemnified trees would unjustly "enrich the recipient."  Mack, 2000

SD 92 at ¶ 27, 613 N.W.2d at 69.  Whether by fraud, under the False

Claims Act, or a mistake of law or fact under the common law claims, the

retention of these funds by WHTF defendants would be a "mistake," and

thus, unjust enrichment.  Parker, 2000 SD 14 at ¶ 17, 605 N.W.2d at 187.

The second amended complaint asserts a plausible claim for unjust enrichment.  Twombly, 550 U.S. at 555.

7.     COUNT ELEVEN–VIOLATION OF 12 U.S.C. § 1833a

The final count of the second amended complaint asserts a claim against WHTF defendants under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a.  (Docket 51, p. 30).  The FIRREA declares that "[w]hoever violates any provision of law to which this section is made applicable by subsection (c)    . . . shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section."  12 U.S.C. § 1833a(a).  Subsection (c) provides for a civil cause of action for violations of a number of criminal statutes, including 18 U.S.C. §§ 1014 and 1001.  12 U.S.C. §§ 1833a(c)(1) and (2).

18 U.S.C. § 1014 defines a criminal violation, and thus a FIRREA violation:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the . . . Federal Crop Insurance Corporation or a company the Corporation reinsures, . . . upon any application, . . . insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014.  In similar fashion, 18 U.S.C. § 1001, describes a FIRREA violation:

26

> whoever . . . [in any dealing with the government] knowingly and willfully—
>
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years . . . .

18 U.S.C. § 1001.

The second amended complaint alleges BHTF defendants and "its partners' misrepresentations" about "their ownership interest in the trees . . . ." were violations of both 18 U.S.C. §§ 1001 and 1014.  (Docket 51, ¶ 145).  Separately, the second amended complaint specifically identifies WHTF defendants, Burns and WHTF, as conspiring with BHTF defendants "by creating a false report, i.e. certification statement, that was intended to influence and did actually influence RCIS to accept the monies generated . . . [from] the sale of the indemnified trees . . . [at] significantly less than the actual amount of money generated from the sale of those trees . . . thus, . . . violat[ing] FIRREA."  Id. at ¶ 146.

Paragraph 145 of the second amended complaint does not identify WHTF defendants by name.  The inference in the allegation that "BHTF's

and its partners' misrepresentations regarding their ownership interests in the trees . . . constitute a violation of . . . §§ 1001 and 1014, and thus . . . a violation of FIRREA" does not, by itself, rise to the level of putting WHTF defendants on notice of the specific claim against them.  Braden, 588 F.3d at 594 ("A complaint states a plausible claim for relief if its factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation marks omitted). However, paragraph 146 specifically identifies WHTF defendants by name and alleges a conspiracy to violate or actual violation of 18 U.S.C. § 1014. (Docket 51, ¶ 146).  The alleged conspiracy focused on the execution of the certification statement as a false report.  Id.

"[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden, 588 F.3d at 594. "[T]he plaintiff must give enough details . . . to present a story that holds together. . . .*[C]ould* these things have happened, not *did* they happen."  Swanson, 614 F.3d at 404 (emphasis in original).  "In assessing a motion [to dismiss] . . . a court should . . . not dismiss [a complaint] 'unless it appears beyond doubt that the [United States] can prove no set of facts in support of [its] claim which would entitle [it] to relief.' "  Holloway v. Lockhart, 792 F.2d at 761 (internal citation omitted).

When considering these specific count allegations in conjunction with the remainder of the incorporated allegations of the entire second amended complaint, the court finds the complaint provides adequate notice and articulation of a plausible claim against WHTF defendants under FIRREA.

## ORDER

Based on the above analysis, it is hereby

ORDERED that the joint motion to dismiss the second amended complaint under Fed. R. Civ. P. 12(c) (Docket 37) by defendants Western Hills Tree Farm, Donald R. Burns, Philip Motor, Inc., and Dakota Auto Supply is denied.

Dated March 17, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE